I would like to reserve three minutes of my time for rebuttal. So just watch the clock. A conspiracy involves a meeting of the minds to accomplish an agreed-upon criminal objective. Because of this, in order to convict one of conspiracy, the government must produce evidence that shows, beyond a reasonable doubt, that the individual charged with joining actually understood the breadth and scope of the conspiracy he's charged with joining. Without that evidence, there is no proof that an actual meeting of the minds necessary to be guilty of that crime actually existed. But does he have to know the names of the people in the DMV, the Arizona Motor Vehicles Department? Absolutely not, Your Honor. Does not have to know the names, does not have to know who they are, how many of them exactly there are. I am not arguing that the necessary knowledge must be details of that nature. However, must understand the breadth and scope. That's what this Court's precedents have specified. You know, if he only had the Harley, or he only had the what was it, the Jetta, or he only had the Harley and the Jetta, your argument might carry some weight. But this paper vehicle and his explanation of it, and the whole purchase order thing, and the moving business, and nobody ever saw it, including his wife, I mean, that's pretty heavy-duty evidence that your guy is up to his elbows in an understanding of what's going on. How do you differentiate this paper Lexus, or why doesn't that sink your client in terms of potential inferences as to what he knew and what he was involved in? Your Honor, I point to the three cases that we stressed in our brief. Yeah, cases don't get you anywhere. This is a fact. This is really, it's a fact question. That purchase order, where did the purchase order come from? I mean, that's one of the bogus stories of all time. It's a $68,000 standing bill. There's nothing else except this purchase order. It turns out the purchase order was a bogus purchase order. It was concocted in order to try to cover people's tracks. Absolutely, Your Honor. We have conceded in our brief that if the government had charged Rosca with a conspiracy involving a paper Lexus, that we wouldn't have this issue to talk about. We have conceded even that possibly if the government had charged Rosca with a conspiracy involving a paper Lexus and a real Jetta and a real motorcycle, we might not have this issue to talk about. But the question is, showing that he's up to his elbows in a conspiracy involving an insurance fraud and a paper Lexus, how does that show that he understands that there's a conspiracy involving over 100 vehicles stretching across two countries in the North American continent involving this number of transactions, pushing out windshields, switching bin plates with over 20 people involved? This is a huge mega conspiracy by the government's own description. That is the answer. The evidence that he is up to his elbows in one scam involving a paper Lexus does not allow the jury to conclude beyond a reasonable doubt that he understood without more evidence, without different kind of evidence, that he's part of a more Where does he think all this paper comes from? Santa Claus? I beg your pardon? Where does he think all this paper comes from? The papers on the Lexus? Yes. Your Honor, we've conceded in the brief that the jury may have been able to conclude that he understood somebody was inside the MVD. Again, that shows that he understands there's a total of three people, himself, El-Jamal, who he deals with personally, and somebody he surmises is inside MVD. He's a little deeper into it now than you just implied. Your Honor, that shows he's – that's as far as it goes, okay? And that's what we've said, is that there's a parallel not to try to – I'm using the case law to show what the facts mean. In the Umagat case, those two people were up to their elbows in a drug-smuggling scam, and they knew the two of them were involved, and they knew a guy named Agawam was involved, and they knew Agawam's friend, who was going to smuggle the drugs, was involved. They knew four people were involved, they knew drugs were being smuggled, and they held – this Court held that was not sufficient evidence for the jury to conclude that they knew about a train – a pattern of four drug-smuggling operations. That's just four. In this case, we're talking about hundreds of scams that Rosca supposedly knew he was joining in. That's a conspiracy involving that many things, and he knew he was joining in. We're talking about over 20 people. The case law, because of the way those cases analyze the facts, really does show that the facts involved here were not sufficient to allow the jury to leapfrog from a few scams, and two other people he knows and surmises are involved, to this really vast conspiracy that the government chose to do. So he should have been convicted of a smaller part of the vast conspiracy. The government could have charged him with a smaller conspiracy. The government charged him with one conspiracy and one conspiracy only, a broad, far-flung conspiracy involving two countries, the U.S. and Canada, over 20 people, over 100 vehicles. The government at one point said it was as many as 161 vehicles. This kind of sounds like you're talking about sentencing considerations, not responsibility concerns. Absolutely not, Your Honor. The question is, this Court's precedents have made plain that it's as if the government chose to charge him with embezzlement and then produced evidence showing he was guilty of rape. It's a different crime. They did not prove him guilty of that crime, of entering into that conspiracy. This is why I focused on the other one. Well, maybe what you're saying is the conspiracy that he may be attached to is a limited one, just having to do with the Phoenix area. Is that what you're saying? At most. It's a – it's a – I would describe it as perhaps three different, very small conspiracies. The paper Lexis was the most substantial thing. He was instructed on an overall conspiratorial basis, right? That he was a party. The jury was properly instructed that they could only find him guilty. They – and the jury listened to the evidence, and following the instructions, they came to this conclusion. Just like in Umagat, just like in Daly, just like in Brown. The evidence was not sufficient to support the jury that conclusion reached. That's why the conviction must be reversed, as in each of those three cases. And, of course, it's not surprising that the jury would reach that conclusion despite the insufficiency of the evidence, because the government chose to try Roscoe, who was involved in a small handful, three at most, of very small scams, together with what they described as the epicenter of this vast conspiracy, Mustafa el-Jamal, who was involved in absolutely every single scam. So we had, I would estimate, 12 further trial days of evidence. It had nothing to do with Roscoe, but it was all allowed to leech over and tar Roscoe. And so there's no surprise the jury found Roscoe guilty, despite the fact that the evidence didn't connect him to this broad conspiracy charge. Because of that third. This paper car, the Lexus, how did he come into these documents that, for example, he applied for insurance with Allstate, I think it's Exhibit 159. Are you familiar with that exhibit? I don't know offhand. It's the Allstate application, but we couldn't find it in the portion of the record that we got in Chambers. But what was the source of that? How did he come into being able to have title, and then go ahead to apply for insurance, and then eventually to get registration? My understanding of how that worked is that el-Jamal schemed with the insider at the Motor Vehicle Division to create paperwork using a VIN number that was taken from a particular vehicle in Canada and make it look like this vehicle was titled in Roscoe's name and actually existed. Okay. Well, now, wasn't that all in front of the jury? It wasn't, yes. The evidence showed that the jury would be permitted to infer that Jamal's knowledge was transferable to him to the extent that this paper vehicle with which he's clearly associated was involved? Perhaps so, Your Honor. Again, we have conceded from the beginning that if the government had chosen to charge Roscoe with a conspiracy, it could back up with evidence a conspiracy about a paper license. We would not have this issue to talk about. The government could have made choices like that in Umagat, Brown, and Daley. They could have chosen to charge the individual in Daley with a couple of individual drug schemes instead of the whole drug distribution conspiracy. The government could have chosen in Brown to charge Brown with one scheme to get money to this fellow Nevis above the statutory lending cap. They didn't. They chose to charge him with the entire conspiracy to back to bolster a failing SNL. The government could have chosen in Umagat to charge those two people with one scheme to help people smuggle drugs. So does it involve a connection to the Canadian side of this? Yes. Well, isn't that enough? Isn't that enough to convince the jury? No. Your Honor, no, because Jamal's – everything in Jamal's head isn't – can't be assumed to be in Roscoe's head unless the evidence shows it was. The jury didn't have a basis to say that those things that were in Jamal's mind and El Jamal's mind were also in Roscoe's mind. Where did the $68,000 purchase order come from? The evidence indicated that it was found on El Jamal's computer and Roscoe gave it to somebody, I think an insurance investigator, so the jury could conclude that El Jamal generated it and gave it to Roscoe and Roscoe gave it to the insurance guy. So that – again, that doesn't say that – Doesn't this show these two are in league in terms of what they know and what they're doing? With the paper, Alexis, absolutely. I keep harping on the point, though, that the question is did the evidence show that Roscoe knew about the breadth and scope of this broad, vast, longstanding conspiracy? I don't agree, Your Honor, because the Harley and the Jetta, first of all, that's two minor scams total. At most, you have three little scams, and we're charging, the government is charging Roscoe with joining in something over 100 vehicles. I beg your pardon? It's a fraud, isn't it? Well, we don't know. It's a fraud. It's a fraud. It's not a little fraud or a big fraud, it's a fraud, and he's got knowledge of it. Of that particular scam, yes. We're talking about the Lexus now. With the Harley and the Jetta, there's very, very little to say about that. All we know is the Jetta, Roscoe was driving it, and when confronted about it, he apparently made up some fake stories trying to hide the fact that he knew something fishy was up with the Jetta. The government itself said they don't know what was planned for the Jetta, what kind of scam the Jetta was going to be involved in when Roscoe had it, because they seized it before anything happened and they had no evidence to say what was afoot with the Jetta. They showed things that had been done with the Jetta before Roscoe got it. They didn't show Roscoe knew anything about what had come before. And they didn't show that Roscoe's knowledge about the Jetta showed, again, that he knew anything about a broad conspiracy over three years, over 100 vehicles. He was simply found driving a car that was some part of this conspiracy. And then the Harley was even less to go on. The Harley was sitting in his garage. An expert looked at it, matched up the VIN with some other parts of the markings on the vehicle, and found that the VIN had been tampered with. There was evidence that the Harley was part of this scheme, that it had used falsified numbers from Canada, et cetera, et cetera. But there was nothing beyond Roscoe having that Harley in his garage that showed that he knew anything about a scam with the Harley or a broader scam of the type he's charged with joining. So this is really the key point, Your Honors. Those three cases that we've been stressing, the Daly, Brown, and Umagat cases, show you can have rock-solid evidence linking individuals to criminal acts that are, in fact, part of a broader conspiracy, and that will not get you home in terms of supporting a jury's conclusion that those individuals have actually, knowingly had a meeting of the minds to join that much broader conspiracy. It's a question, to some degree, of scale. It's a question of understanding the breadth and scope of what you're alleged to have joined in. And having, again, being up to your ears and fully joining in particular transactions simply does not allow the jury to draw that conclusion. Now, it's important to note that there's a couple of ways in which the evidence failed to show Roscoe's knowledge and understanding of the full conspiracy here. It's not just the fact that he didn't know of other individuals involved, aside from himself, El-Jamal, and perhaps somebody he could have guessed was inside of MBD. That's a total of three people, which is the same number of people the defendant in Daly knew about, himself and two others. That was insufficient in the Daly case. It's also the fact that Roscoe was not shown to have known of the very large number of other criminal acts and transactions that were part of this broad conspiracy charged by the government. So it's on two different dimensions that Roscoe's knowledge under this evidence failed to be proved by the government. It's the number of participants he had no idea about. It's the number of transactions and criminal acts he had no idea about. Now, there's a few things that the government has argued in its response brief in an attempt to show that its evidence really was sufficient to show Roscoe had a meeting of the minds and joined in this broad conspiracy. We don't think those are very compelling. The government points out that Roscoe was friends with El-Jamal, the hub figure, the epicenter. But this Court has made plain that mere association with a conspiracy order. This is more than mere association. I mean, the purchase order business makes this a lot more than mere association. The question is what goes beyond the proven criminal acts to show the knowledge of the broader conspiracy. And beyond that, all they can really say is, well, he was friends with the guy. He didn't just do a couple of scams or a scam. He was friends with him. He was housemates with him. That is simply adding mere association to one or two criminal acts. And that's not sufficient. The government points out that Roscoe could have known there was an MVD insider. Again, that doesn't show knowledge of a much, much broader cast of characters that are part of this conspiracy he's charged with joining. And the government has talked about the MVD records and really tried to sort of springboard from facts about the MVD records that were shown at trial and the idea that Roscoe must have known that there was what the government calls a Canadian arm to the conspiracy. The government says if you look at the MVD records with expert knowledge about forged documents, about Canadian documents, how they're supposed to look in Alberta, what should be in French, et cetera, et cetera, you would know these are really well done. And that shows somebody in Canada is doing them and that Roscoe must have known also that somebody up in Canada is stealing cars. So that Roscoe constructively knew there was a Canadian arm to the conspiracy. The problem with that, the essential problem with that is that the evidence didn't show that Roscoe actually saw these documents, for one thing. So he couldn't be charged with that kind of knowledge and with having drawn those kinds of conclusions. Roberts. Which documents are you specifically referring to? Falsified MVD records related to the three documents, the three vehicles he's connected to. Even if the evidence showed that Roscoe had observed and scrutinized these documents, there wasn't any evidence that Roscoe knew anything about Canadian motor vehicle documentation. Well, he did have, at some point he had the title to the paper car. Your Honor, I scanned the record for that. I saw that there was a reference to something being admitted when I believe the insurance agent was discussing the insuring of the Lexus. That's exhibit 159, which is what my question was about. I didn't think that as I read the record, it didn't establish that what that what that exhibit actually was or show that Roscoe had actually possessed it. I know it's indicated it was an all-state insurance policy application for the Lexus. Okay, Your Honor, I could be off on that. I read the transcript and saw that it was admitted, but it was not explained on the transcript, on the record, what exactly that was. Your Honor, even if Roscoe was shown to have seen these documents, even if the evidence showed he saw the title and some of the other falsified documents, there was no evidence that Roscoe knew anything about Canadian vehicle documentation, what it should look like, that he could distinguish that it was done by a skilled forger or not. And even if he knew it was done by a skilled forger, he wouldn't have a basis to conclude it was anybody other than Al-Jamal, who he knew was in on it, who had forging Canadian documentation tools in his apartment that had done it. It doesn't show he knows that there was a Canadian arm. Your Honor, I would like to, Your Honors, I would like to reserve the balance of my time for rebuttal. Roberts. Roberts. We'll hear from the government. Peter Sexton. I'm an AUSA in Phoenix, Arizona, and I was one of two lawyers that was trial counsel in this particular matter. To answer one of the questions that the judge just concluded on about the insurance broker's application, that the application was admitted into evidence, and within that application is the VIN number for the fictitious paper lexis. That VIN number could only have come from the fraudulent title that would have been issued by the corrupt MVD agent that was given. That information was given to Rosca, who then gave it in turn to his insurance broker. The title in evidence? The title was admitted as a public record through the corrupt MVD agent who testified. So both the title in Rosca's name for the lexis was admitted through her, and the application for the insurance on the paper lexis was admitted through the insurance broker. Now, is that Exhibit 159? Do I have that correctly? Do you know? I don't know which exhibit number, but I probably can find it in a moment. Oh, right. Well, if you let us know before we leave. Yes, thank you. So in that sense, both there was sufficient evidence from which the jury could infer that Rosca had detailed knowledge of what the actual title in his name for this paper lexis would show. He also would need to know more about the Canadian side of it, and this is one of the fair inferences to be drawn from the evidence, is that because the insurance investigators and law enforcement were investigating that particular vehicle, he was needing to come up with the fake invoice, how he acquired it. The immediate predecessor to Rosca on the title documents for the MVD is a Canadian owner out of so when you look at the MVD records, you see a false, in that particular case, Alberta registration titling it over into Rosca's name. And so the prior owner would have come from Canadian documentation. That would have been the person who would have, quote, supposedly. Well, you heard counsel's argument that Jamal could have ginned that up in his own computer in Phoenix. Well, that's an inference, but it's also a reasonable inference to be drawn by the jury that, and in this particular setting, all inferences are construed in the benefit of the government. He has he's entitled to his inference. I'm entitled to my inference. We both made our inference arguments to the jury, and the jury obviously convicted. From the standpoint of his involvement, why, one, he keeps throwing out a hundred cars. There were 32 vehicles presented to the jury, some of which were actual stolen vehicles and some were the paper variety. Mr. Rosca was with three of those 32, or roughly 10 percent. He also had two actual stolen vehicles and one paper vehicle, which is really the way the conspiracy evolved. It began with stealing the actual vehicle, some possessing and committing insurance fraud eventually. And then they evolved to where now that they had a corrupt MVD agent, they actually no longer needed to have. Kennedy. Why bother to go to the trouble of stealing a vehicle? You could just make up paper. That's what they did. And that's what the Lexus represents. How many defendants were on trial in this case? Two. El-Jamal and Defendant Rosca, a total of 11 were processed in some fashion. I would say seven cooperated and testified at trial. And so about 13 overall were prosecuted. There were 32 vehicles presented to the jury. And with Rosca, Defendant Rosca got the Harley in 2000. So this conspiracy was approximately three years long. And so Rosca picked up a vehicle, the Harley, in 2000. The Jetta was picked up in 2001. And then the paper Lexus was his 2002 car. And so he was caught in the act of, by both the insurance side and law enforcement. I believe one of the judges asked about El-Jamal creating it. It was created within that fake purchase order was created by El-Jamal and Rosca within a day or two of the actual titling of the vehicle from the fake Canadian documentation into Rosca's name by the corrupt MVD agent. So the way I hear the argument is that there's a giant conspiracy out there and that you overreached in charging and convicting this guy with the giant conspiracy that our cases required you to convict him only of a smaller conspiracy. Your answer to that is what? My answer is, is that he had sufficient knowledge of a sufficient amount of the scope in this Court's law regarding that you don't need to know every actor, you don't need to know every action, you don't need to, that your connection to a conspiracy, once it's established. That's all quite right. But what is the specific sufficient knowledge that you're relying on to counter the argument from the defense? Specific knowledge, one, is he possessed three separate vehicles, all with false Canadian history. He did it for the three. Is the fact that the false Canadian source is enough? At least to imply or at least to infer that there is another arm of this conspiracy, at least a reasonable inference can be drawn that having three vehicles in his possession all with titling history in the immediate past from Canada, that there is a Canadian side or at least others outside of Arizona besides El Jamal and the corrupt MVD within Phoenix. Two, that he does it over the breadth of the entire conspiracy. And so that shows some knowledge of the scope of it from the standpoint of he's picking up a car in 2000, another one in 2001, and now he's evolving, like the others, into doing the paper cars in 2002. In other words, his participation tracks the evolution of the conspiracy from real cars to paper cars. And the duration. Not only the nature of it, but also the duration of the conspiracy. But also, one moment. It was the, I lost the thoughts. One second. You were summarizing the evidence that ties into the broader conspiracy. The reason we, so from a minimum, he obviously has a very firm connection to really the primary mover within the Arizona side of this, and that's El Jamal. That connection was clearly, was established. But the counsel concedes that. I'm just trying to go through what basically allows it. Also, because of the fact he never had to go down to the MVD office, he can clearly know that there's a corrupt MVD agent involved in this process. I think counsel even conceded that. The problem that I think you need to address is what is it that takes it beyond the players in Arizona? One is, one is the Lexus. He has to be dealing with the recent titling history to know that that recent titling history, when I'm talking to law enforcement or insurance, is dealing with this came from a Canadian owner just prior to it. And it's a reasonable inference, especially in light of the fact that the Jetta had a recent titling history out of the same Canadian province. And the Harley that's in his possession also came from a Quebec province. And so all three of those are reasonable inferences to draw that outside of Arizona, there are others who are part of the process of changing the identities. Also, the VINs were fairly sophisticated. And so the whole process of manufactured VINs, switching the identities and one individual being El Jamal, there's no information at all that Heidi Nielsen, the MVD agent, was somehow assisting in propping out the front windows and switching the dashboard VINs. Or that either El Jamal or Ms. Nielsen from the MVD were somehow manufacturing what turned out to be very high quality VIN plates that were ultimately switched. So that information shows that there is at least a sufficient number of people that he's involved with to know that it's broader than simply a small little side deal he's having with El Jamal. I'd like to respond to one thing that came out in the reply brief, that somehow by our concession that he should be released pending appeal after eight months of serving his 24-month sentence, that somehow that concession should be used by you to show that we agree that this is a meritorious appeal and therefore should reverse on that basis alone. The standard that this Court applies, obviously, in the release pending appeal comes out of your handy decision. And that is, is that, and they use the word that it has to raise a, and the statute says it too, it has to raise a substantial question. And this Court has construed that to be simply that the question is something other than not frivolous. And because the district court took this under advisement when he was considering the motion for acquittal and ultimately ruled in the government's favor, we felt it would be improper to argue that this was a frivolous argument. So we conceded that it was not frivolous and that the scope of his appeal, if he prevails in this Court, would, in fact, either this Court would enter an acquittal or it would mandate such by the district court. But by conceding that point and allowing him to be released, in no way to say something is not frivolous is not to concede that it in some way is meritorious. And so based on what I've submitted thus far, it's our position that on all three grounds, and they're all interrelated, they all basically weave around this notion of a multiple conspiracies versus single conspiracies for each one of the three main issues he's raising. As far as the trial time and sort of the prejudice argument of being joined with Al-Jamal, I think it's an unfair representation to say that only a couple of days of his trial was devoted to the evidence associated with Defendant Rosca. In fact — This is a motion to sever issue? Yes. On this issue, I believe Appellant is not fairly attributing some of the early cooperating testimony to informing the jury and the district court about the scope and breadth and how the nature of this operation actually took place. There were 32 cases in the case, 32 cars were presented, only three of which are specifically titled or in some way possessed by the defendant. But the broader conspiracy was something that — was something the government was entitled to present. And then near the end of this trial, from the government's standpoint, very specific witnesses were brought in from the standpoint of an ex-wife, his insurance company, to law enforcement. There was a forensic analysis that showed that the purchase order came from the computer of El Jamal. So there was a lot of specific evidence. There were actually witnesses that were just specific to Rosca's involvement, plus his share of the overall witness allocation. And that's consistent with the way trial counsel for Mr. Rosca treated those other witnesses. In fact, a fair review of the record would show that the primary cross-examination of every single witness, including the ones that were pinpointed towards Rosca's knowledge or understanding of the paper lexis, were far more cross-examined by Mr. Rosca's trial counsel than actually the trial counsel for defendant El Jamal. So a fair allocation of the time is really much more of a 40-60 or 50-50, short share, and therefore the counsel's argument that this was an El Jamal trial in which Rosca was a tail, I think, is an unfair characterization of the record. He also, within this notion, that there were, and I want to say there are unspecified admissions by El Jamal that were brought in that somehow overly prejudiced this admission, but they were also admitted for many other exceptions to a hearsay rule or admitted as non-hearsay. They were either offered not for the truth of the matter, they were official records, they were co-conspirator statements. And so much of the so-called prejudice really doesn't exist in any sense, either from a confrontation clause standpoint or from a fairness in the allocation of the trial time. Finally, on the variance issue, the thrust of that is, is that this case is a caudiacus hub-spoke-type conspiracy, and this is not, and as the evidence came out at trial, this isn't one with a central hub. It's with several primary players, and you have El Jamal as a primary player, you have Heidi Nielsen within the NVD who touches every single one of the 32 admitted, and you also have a Canadian side that deals with the false Canadian registrations and also with the, many of the cars were stolen out of Canada. Many of the VINs that were used to switch into came out of vehicles that were located out of Canada, came out in the evidence that they would find a like, model, make, and year, take that VIN by viewing it in a dealership, and that would be the cloned VIN that would be put on the title paperwork and also would be put into the manufacturer of the new public VIN that was taken out and VIN switched at that point. So from a variance standpoint, this does not meet the caudiacus sort of model where you have one person and eight people who are absolutely strangers. Obviously, in this particular thing, everybody is working together. Everybody has a piece here, and Roska's involvement shows that he has two possessed vehicles, one paper vehicle, it all goes through the same corrupt NVD. He has the same type as everybody else of fraudulent Canadian documents, and his two vehicles he actually possessed, both are VIN switched in exactly the same way as every other car in this case. Unless the court has any other questions, I think I've covered them all. Questions, counsel? Thank you. Mr. Kaplan, you have some reserved time. Thank you. There's a parable about a number of blind men holding onto parts of an elephant. One holds the trunk and believes he's holding onto a snake. Another one holds the tail and believes he's holding onto a vine. Another one holds onto one of the elephant's legs and believes he's holding onto a tree. The question in this case is, what is the evidence that allowed the jury to conclude beyond a reasonable doubt that Roska knew he was holding onto an elephant? Now, there's a point that the panel has made about Roska's participation tracking the evolution of the conspiracy. The question is, yes, it may be able to stand back and look at all the evidence and say, and this is a sort of a slip that the government subconsciously makes repeatedly here, of saying, here's what the evidence showed, here's what the jury knew, here's what the jury could conclude. All that is well and good. The question here is, what did the evidence allow the jury to conclude Roska knew? Roska's participation may have tracked the evolution of the conspiracy, but where is the evidence that he knew? Well, what specifically about the evidence of the Canadian titles? Isn't that an important connection? If the evidence showed he saw those titles, if the evidence showed he knew that titles that showed ownership in Canada really meant ownership in Canada, and why would he know that if he's part of a conspiracy, if he knows it's forged documents? Why does looking at a title that says this document was from Canada tell him it really was from Canada, it's forged, it could be completely falsification as far as he knows. Why does it, where's the evidence that he knew if the forgery is well done, that he knows it's well done, that he knows that if it's well done, there must be somebody in Canada doing it? Where's the evidence that he paid full consideration for a vehicle, which was titled in his name? Which vehicle were you referring to, Your Honor? Any vehicle that had the title changed on it. He never bought a straight title, did he? I think he was. On the evidence that came to the jury. I don't know. The evidence said what he paid for the paper Lexus, he said he bought the motorcycle, maybe it was given to him, all of that. Sixty-seven thousand for the Lexus, and the wife says, what? Yes, the wife said she hadn't seen the Lexus. There was evidence that it didn't exist. It was a paper car. Again, all that is well and good. We've always said that the. Your concessions on the Lexus don't get you out from under the implications of what it all means. It's, again, I. He shot him. Oh, if he shot him, doesn't mean he didn't shoot him. If the charge was that he shot him, there would be, this would be a different case. I mean, you can't minimize what the Lexus indicates by conceding that, yes, you got him cold on the Lexus. It indicates a lot. If he was charged with that crime, it would, it would indicate enough for the jury to return a guilty verdict. He was charged with something very, very different. That's the key point. Charged with a pattern of conduct that went on over at least three years. And the government has referred to 32 vehicles being an evidence at trial. This was a conspiracy indictment. Page eight of more than 100 motor vehicles and cycles. He's connected in any possible way to only three and minimally to two of those. All right. Thank you, counsel. I have a question for the government. Did you find that exhibit number? I have not found it yet. I don't think I know where it came from. Something that the court required me to do, but there's some amount of letter that we had to submit. I'm very comfortable that it came in, the file itself came in through the OCS public records. I can't remember. The specific problem that we have is that at least up to the moment, we haven't been able to locate exhibit 139. We don't know where it is. And if there's a way between the two of you, you could make a copy, a Xerox copy of that or even a replica of any kind, that would be appreciated. Is it 139 or 59? I'm sorry, 159. Excuse me. Thanks. 159 is the exhibit, which we understand is the all-state insurance policy application for the Lexus. If you wouldn't mind trying to get that to us in seven days from today, we'd appreciate it. Thank you very much. The case just argued is submitted for decision, and the Court will adjourn.
judges: Beezer, O'scannlain, Trott